IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| JOE SOSA | § | |
| Vs. | § | CIVIL ACTION NO. 2:05-CV-153 |
| PARCO OILFIELD SERVICES, LTD., ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

## I.   Introduction

Before the Court are defendants' various pleas in abatement, motions to stay proceedings and motions to compel arbitration (##4, 12, 20, 29).  Plaintiff Joe Sosa sued Defendants PARCO Oilfield Services Ltd., Inc. (hereinafter "PARCO"), Occupational Injury Benefit Plan–ERISA for PARCO (hereinafter "the Plan"), Stephen Parsons, administrator of the Plan (hereinafter "Parsons"), Union Central Insurance Company (hereinafter "Union"), and ERC for wrongful denial of benefits under an ERISA Occupational Injury Benefit Plan, violation of wage and hour laws under the Fair Labor Standards Act, and state law negligence and gross negligence causes of action that allegedly arose while working for PARCO as a roustabout crew leader.  The defendants have filed pleas in abatement and/or motions to stay and to compel on the grounds that Sosa, a former employee of PARCO, allegedly entered into a written arbitration agreement as part of a voluntary ERISA plan. Sosa has responded to the motions and urges that the ERISA Occupational Injury Benefit Plan and the incorporated arbitration agreement are unenforceable based upon federal and state law.

After a careful review of the record and the applicable law, the court concludes that Sosa's

state law negligence and gross negligence claims are subject to the arbitration provision.  Sosa's

claim for the wrongful denial of benefits is not subject to arbitration because the arbitration provision

conflicts with the relevant ERISA regulation.  There is no contention that Sosa's wage and hour

claims are subject to the arbitration provision, and the court does not stay Sosa's pursuit of those

claims.

## II.    Facts

On June 22, 2003, Sosa was injured when a co-employee operating a trenching machine

snagged electrical cables that became entangled in the digging apparatus of the trencher and wrapped

around Sosa's legs.  The cables drug Sosa into various pieces of equipment, causing Sosa alleged

spinal injuries and a broken leg.  Sosa is almost seventy years old and possesses a ninth grade

education.

PARCO is a non-subscriber to the Texas Workers' Compensation Act.  At the time of Sosa's

injury, PARCO had an alternative ERISA Occupational Injury Benefit Plan.  Section Twelve of this

plan requires binding arbitration to resolve disputes.  The plan contains the following language:

> AGREEMENT TO ARBITRATE:  In the event there is any dispute **arising out of any accident or occurrence**, or any claim for or regarding insurance or other benefits under this plan or otherwise regarding or relating to this plan, including its administration, affect or construction, which the parties are unable to resolve through informal discussions or mediation, **you and the company agree to submit all disputes exclusively to final and binding arbitration**.

Plaintiff's First Amended Complaint, Exhibit A, Section 12.1 (emphasis added).  Sosa claims to

have been denied benefits under the plan despite requesting an administrative review of the denial

of benefits.  Sosa now claims that the Defendants wrongfully denied him benefits under 29 U.S.C.

§ 1132 and violated various sections of the Fair Labor Standards Act.  Because his employer did not

subscribe to worker's compensation insurance, Sosa also raises state law claims of negligence and

gross negligence against PARCO to recover damages for the injuries he sustained.

**III.     Analysis of Sosa's Arguments Concerning Invalidity of the Arbitration Agreement**

Under the Federal Arbitration Act (hereinafter the "FAA"), an arbitration agreement which

involves interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist

for the revocation of any contract."  9 U.S.C. § 2.  To determine whether an arbitration agreement

is enforceable, courts must apply the relevant state law principles that govern contract formation. *See*

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995).  "[A] party seeking to

invalidate an arbitration agreement bears the burden of establishing its invalidity."  *Carter v.*

*Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)(citing *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).  However, "[w]hile there is a strong federal

policy favoring arbitration, the policy does not apply to the initial determination whether there is a

valid agreement to arbitrate."  *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir.

2004).  "Nonetheless, once a court determines that an agreement to arbitrate exists, the court must

pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities

in favor of arbitration."  *Id.*

As an initial matter, the Court notes that the parties do not dispute that the alleged arbitration

agreement is governed by the FAA, nor that the alleged arbitration agreement affects interstate

commerce as required by the FAA.  Instead, the parties dispute whether the alleged arbitration

agreement is valid under various federal regulations, state laws, and basic contract principles.  The

defendants move this Court to stay all proceedings in the present case pending arbitration.

In response, Sosa claims that:  (1) Tex. Lab. Code Ann. § 406.033(e) prohibits pre-injury

waiver of rights by employees of Texas workers' compensation non-subscribers; (2) PARCO's

occupational injury benefit plan and the alleged arbitration agreement fail to satisfy the Texas "fair

notice" requirements; (3) PARCO's consideration for the occupational injury benefit plan was

illusory; (4) PARCO's occupational injury benefit plan is unconscionable; and (5) the alleged

arbitration agreement is unreasonable *per se* under 29 C.F.R. § 2560.503-1(c)(4).  As explained

below, however, Sosa's arguments fail, except with respect to any effort by the defendants to compel

arbitration of his ERISA claim for wrongful denial of benefits.

      A.      Tex. Lab. Code Ann. § 406.033(e)

First, Sosa contends that the arbitration provision is invalid under Tex. Lab. Code Ann. §

406.033(e).[1]  That Texas statute prohibits pre-injury waivers of rights by employees of non-

subscribers.  Therefore, Sosa argues that any alleged waiver of common law rights and access to the

courts under the PARCO occupational injury benefit plan is void and unenforceable.  However, in

---

[1]Tex. Lab. Code Ann. § 406.033(a) and (e) state:

(a) In an action against an employer who does not have workers' compensation
insurance coverage to recover damages for personal injuries or death sustained by
an employee in the course and scope of the employment, it is not a defense that:

    (1) the employee was guilty of contributory negligence;

    (2) the employee assumed the risk of injury or death; or

    (3) the injury or death was caused by the negligence of a fellow employee.

(e) A cause of action described in Subsection (a) may not be waived by an
employee before the employee's injury or death. Any agreement by an employee
to waive a cause of action or any right described in Subsection (a) before the
employee's injury or death is void and unenforceable.

*In re R&R Pers. Specialists of Tyler, Inc.*, the Tyler Court of Appeals held that the FAA preempted

Tex. Lab. Code Ann. § 406.033(e) because "[u]nder the supremacy clause of the United States

Constitution, U.S. Const. art. IV, cl. 2, the FAA 'takes precedence over state attempts, legislative

or judicial, to undercut the enforceability of arbitration agreements.'"  146 S.W.3d 699, 703 (Tex.

App.–Tyler 2004) (quoting *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 374 (Tex.

App.–Texarkana 1999)).  In support of its reasoning, the Tyler Court of Appeals cited *Jack B. Anglin

Co. v. Tipps*, 842 S.W.2d 266, 270-71 (Tex. 1992).  In *Tipps*, the Texas Supreme Court held that the

non-waiver provision of the DTPA was preempted by the Supremacy Clause and the FAA.  The

Tyler Court of Appeals determined the reasoning found in *Tipps* mandated the same result in ERISA

injury benefit plan cases in which there was a mandatory arbitration provision.  Based upon *In re

R&R Pers. Specialists of Tyler, Inc.* and *Tipps*, the Court rejects Sosa's argument that Tex. Lab.

Code Ann. § 406.033(e) invalidates the arbitration provision.

> B.    Fair Notice Requirements

Next, Sosa claims that the arbitration provision amounts to a prospective waiver of his rights

to bring a common law negligence claim against a non-subscribing employer.  As a result, Sosa urges

that the Occupational Injury Benefit Plan and the arbitration agreement contained therein are

unenforceable under the "fair notice" requirements of Texas law.  The fair notice requirement

requires that "the intent of the parties must be specifically stated in the four corners of the contract."

*Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004)(quoting *Ethyl Corp. v. Daniel

Constr. Co.*, 725 S.W.2d 705, 707 (Tex. 1987)).  "The other requirement, of conspicuousness,

mandates 'that something must appear on the face of the [contract] to attract the attention of a

reasonable person when he looks at it.'"  *Id.*  (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482

S.W.2d 841, 843 (Tex. 1997)).   "Language may satisfy the conspicuousness requirement by

appearing in larger type, contrasting colors, or otherwise calling attention to itself."  *Id.*    In the

PARCO occupational injury benefit plan, there is no conspicuous language alerting a signatory that

he is agreeing to a non-subscriber workers' compensation benefits plan and the resulting

consequences.

Sosa cites to *Storage & Processors* in support of his assertion that the PARCO plan (and the

arbitration clause contained therein) are unenforceable as a matter of law under the express

negligence doctrine and the conspicuousness requirement.  In *Storage & Processors*, the Texas

Supreme Court held that employers must satisfy the fair notice requirements of the express

negligence doctrine and conspicuousness when they enroll employees in a non-subscriber workers'

compensation benefits plan.  *Id.* at 194.  The Texas Supreme Court stated:

> [W]orkers' compensation is a strong public policy in Texas and indeed in all fifty
> states.  The Legislature has made clear its preference for a quick and fair system to
> compensate injured workers . . . .  Permitting companies to induce their employees
> to sign up for something other than subscriber-level benefits without a guarantee that
> the workers understand the plan they are accepting would substantially undercut the
> public policy behind the compensation system.  Thus, while this plan may not
> represent the same extraordinary degree of risk-shifting as an indemnity agreement,
> the expressed and reiterated public policy of this state justifies our imposing the fair
> notice requirements.

*Id.* at 193-94.

While Sosa correctly argues before this Court that the Texas "fair notice" requirements apply

to non-subscriber plans and potentially make the PARCO occupational injury benefit plan

unenforceable as a matter of law, any defect in the plan as a whole does not invalidate the arbitration

agreement.  In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, the Supreme Court stated:  "In

passing upon . . . a[n] application for a stay while the parties arbitrate, a federal court may consider

only issues relating to the making and performance of the agreement to arbitrate." 388 U.S. 395, 404

(1967).  If a party's defense to an alleged agreement to arbitrate is a "general" allegation that the

entire contract containing the arbitration agreement is void or voidable, then the defense does not

relate to the making of the arbitration agreement. *Banc One Acceptance Corp.*, 367 F.3d at 429.

"Only if the arbitration clause is attacked on an independent basis can the court decide the dispute;

otherwise, general attacks on the agreement are for the arbitrator."  *Will-Drill Res., Inc. v. Samson*

*Res. Co.*, 352 F.3d 211, 215 (5th Cir. 2003).  In the present case, Sosa's defense that the PARCO

plan does not comply with the Texas "fair notice" requirements is an allegation that the contract,

insofar as it amounts to a waiver of a negligence cause of action, is voidable.  Therefore, the issue

whether the PARCO occupational injury benefit plan complies with the Texas "fair notice"

requirements is for the arbitrator to decide.

      C.        Illusory Consideration

      Next, Sosa claims that the termination clause in the PARCO occupational injury benefit plan

makes PARCO's consideration illusory.  The termination clause states:  "This Plan may be

terminated by the Employer at any time."  Defendant PARCO Oilfield Services, Inc.'s First

Amended Plea in Abatement and Original Answer, Exhibit A, p. 25.  Sosa cites to *J.M. Davidson,*

*Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), in support of his argument.  In *Davidson*, the Texas

Supreme Court remanded the case to the trial court for a determination of whether a clause in a

company's Alternative Dispute Resolution Policy allowing the company to unilaterally abolish or

modify any personnel policy encompassed the agreement to arbitrate.  The Texas Supreme Court

noted most courts have held that "if a party retains the unilateral, unrestricted right to terminate the

arbitration agreement, it is illusory."  *Id.* at 231 n.2.

The present case is different from *Davidson*.  In *Davidson*, the alleged clause allowing the company to unilaterally abolish or modify the arbitration agreement was contained in a stand-alone arbitration agreement itself and was not a part of an underlying contract.  The Texas Supreme Court in *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005), held that "in the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract.  But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration."  Here, the parties' agreement regarding compensation for occupational injuries serves as sufficient consideration because the arbitration clause was part of an underlying contract.  Therefore, Sosa's argument that PARCO's consideration was illusory fails.

D.      Unconscionability and Lack of Mutuality

Next, Sosa argues that the agreement to arbitrate is unconscionable and unenforceable.  "Unconscionability includes two aspects:  (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself."  *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002).  "Courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision."  *Id.* at 572.

Sosa claims that PARCO secured the arbitration agreement through procedurally unconscionable means.  According to Sosa, the arbitration agreement in the PARCO occupational injury benefit plan is unconscionable and unenforceable because: (1) it was created without the benefit of pre-agreement bargaining; (2) between parties of unequal bargaining power; (3) signed

by an individual who did not have an opportunity to read the documents and was not given a copy

to read at a later date; (4) signed by an individual who was instructed by his superior to sign because

it was necessary; and (5) it was presented in an environment where there was no opportunity to read

and understand.   In support of his arguments, Sosa presents affidavits and deposition excerpts.

According to Sosa, PARCO officials never explained the occupational injury benefit plan, provided

copies of it, or explained the legal effect of the arbitration clause.  Sosa further claims that he does

not recall signing the PARCO "Employees Rights and Responsibilities" form and that PARCO

officials normally handed employees documents at jobs sites with instructions to sign the documents

at certain locations.   Sosa also claims that PARCO officials gave little or no explanation of the

documents' contents or effects.  The employer has presented contrary evidence.

Although the issue is a close one, the Court rejects Sosa's argument that PARCO obtained

the arbitration clause through procedurally unconscionable means.   "Under the FAA, unequal

bargaining power does not establish grounds for defeating an agreement to arbitrate absent a

well-supported claim that the clause resulted from the sort of fraud or overwhelming economic

power that would provide grounds for revocation of any contract." *In re AdvancePCS Health L.P.*,

172 S.W.3d 603, 608 (Tex. 2005)(citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33

(1991)).   The Texas Supreme Court has upheld arbitration agreements between employers and

employees, despite claims of unequal bargaining power and lack of opportunity to negotiate. *See*

*In re Halliburton Co.*, 80 S.W.3d at 572; *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90-91 (Tex.

1996).  Furthermore, although Sosa contends that he did not read the occupational injury benefit plan

because PARCO presented the acknowledgment form in an environment where there was no

opportunity to read and understand, Texas case law holds that the "failure to read the agreement does

not excuse [Sosa] from arbitration." *EZ Pawn Corp.*, 934 S.W.2d at 90.  The Fifth Circuit has

stated:

> The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement. *See In re Turner Bros. Trucking Co.*, 8 S.W.3d 370 (Tex. App.–Texarkana 1999)(finding an agreement was procedurally unconscionable where one of the parties was functionally illiterate, nobody explained the agreement to him, and the person who gave him the agreement to sign did not understand the agreement); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937 (S.D. Tex. 2001)(finding procedural unconscionability where the plaintiffs did not speak English and the agreement was not translated or explained to them).

*Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002).

In the present case, there is no evidence that Sosa could not read or speak English.  In fact, Sosa

answered questions at his deposition in English and testified that he received a ninth grade education.

Oral Deposition of Joe Sosa at p. 5, Exhibit 1 of Evidentiary Hearing (April 4, 2006).  There is also

evidence that Sosa acted as a translator for his employer.  Finally, Sosa accepted benefits under the

Plan and is simultaneously suing the plan for wrongfully terminating those benefits.  Under these

circumstances, Sosa must accept the terms of the contract, including its arbitration provision.

*Washington Mutual Financial Group v. Bailey*, 364 F.3d 260 (5th Cir. 2004)(enforcing arbitration

agreement against illiterate borrower's wife who was non-signatory to the agreement based on

principles of equitable estoppel).  Therefore, based upon Texas and federal case law, the Court is

constrained to reject Sosa's argument that PARCO secured the arbitration agreement through

procedurally unconscionable means.

      E.     29 C.F.R. § 2560.503-1(c)(4)(ii)

Sosa's final argument attacks the arbitration provision under a recent federal regulation.  He

contends that 29 C.F.R. § 2560.503-1(c)(4)(ii) voids the arbitration agreement.  The relevant

regulation provides that claims procedures of group health plans are reasonable only if:

> (4) The claims procedures do not contain any provision for the mandatory arbitration of adverse benefit determinations, except to the extent that the plan or procedures provide that:
>
> (i) **The arbitration is conducted as one of the two appeals described in paragraph (c)(2) of this section and in accordance with the requirements applicable to such appeals**; and
>
> (ii) **The claimant is not precluded from challenging the decision under section 502(a) of the Act or other applicable law.**

29 C.F.R. § 2560.503-1(c)(4)(emphasis added).

Contrary to the defendants' arguments, the regulations incorporate these procedural safeguards into disability plans. Specifically, the regulation states: "The claims procedures of a plan **that provides disability benefits** will be deemed to be reasonable only if the claims procedures comply, with respect to claims for disability benefits, with the requirements of paragraphs (b), (c)(2), (c)(3), and **(c)(4)** of this section." 29 C.F.R. § 2560.503-1(d)(emphasis added). Section 502(a) is ERISA's civil enforcement provision and provides for a right of civil action in the United States District Court against a plan for recovery of benefits under an ERISA plan.[2]

The Department of Labor issued the current version of 29 C.F.R. § 2560.503-1 on November 21, 2000. Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246 (November 21, 2000)(to be codified at 29 C.F.R. § 2560.503-1). The current version became effective on January 20, 2001,

---

[2]29 U.S.C. § 1132(a)(1)(B) states: "A civil action may be brought–(1) by a participant or beneficiary– . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

and applies to all claims filed on or after January 1, 2002.[3]  *Id.*   When the Department of Labor

proposed new regulations for benefit claims procedures of all employee benefit plans covered under

Title I of ERISA, there were many comments on the appropriateness of arbitration in ERISA claims

procedures.  The Department of Labor rejected a complete ban on arbitration in ERISA claims

procedures and instead permitted plans, "pursuant to subparagraph (c)(4), to require some limited

forms of mandatory arbitration."  *Id.* at 70,253.  While the Department of Labor allowed "voluntary

binding arbitration" in some instances, however, it apparently rejected binding arbitration in the

claims procedures of group health plans and plans providing disability benefits.[4]  *Id.* at 70,253-54.

The defendants contend, however, that the court is not considering a disability plan.  Instead,

according to their argument, the plan at issue is an "Occupational Injury Benefit Plan" under

ERISA.[5]  This argument exalts the title of the plan over its substance.  Among other things, the plan

---

[3]The PARCO occupational injury benefit plan became effective on September 1, 1998.

[4]Group Health Plans and disability plans can offer "voluntary binding arbitration" after a
dispute has arisen.  Employee Retirement Income Security Act of 1974, 65 Fed. Reg. at 70,253-
54.

[5]The PARCO plan states:  "This Plan shall be construed and enforced pursuant to federal
law under ERISA and is meant to be an unfunded employee welfare benefit plan as defined in
Section 3(1) of ERISA."  Plaintiff's First Amended Complaint, Exhibit A, Section 13.9.
"Employee welfare benefit plan" is defined under ERISA as:

> any plan, fund, or program which was heretofore or is hereafter established or
> maintained by an employer or by an employee organization, or by both, to the
> extent that such plan, fund, or program was established or is maintained for the
> purpose of providing for its participants or their beneficiaries, through the
> purchase of insurance or otherwise, (A) medical, surgical, or hospital care or
> benefits, or benefits in the event of sickness, accident, disability, death or
> unemployment, or vacation benefits, apprenticeship or other training programs, or
> day care centers, scholarship funds, or prepaid legal services, or (B) any benefit
> described in section 186(c) of this title (other than pensions on retirement or
> death, and insurance to provide such pensions).

pays benefits in the form of a reduced weekly wage to employees injured on the job if the employee

meets the criteria specified in the plan.  The plan therefore provides for disability payments and is

subject to the regulation.

Because the plan is subject to the federal regulation, the next question is whether the

arbitration provision is reasonable under those regulations.  As noted above, to be reasonable, the

arbitration provision must be conducted as one of the two appeals from an adverse benefits

determination and it must not deprive the beneficiary of his right to sue in federal court.  In this case,

the provision fails on both counts.  In the first place, the arbitration provision is not contained in the

section of the plan that governs review of adverse benefits determinations.  In addition, even if it

was, the requirement of arbitration follows an additional requirement of non-binding mediation.  If

applicable, the arbitration process would therefore be an impermissible third appeal of an adverse

benefits determination. Finally, because the provision mandates binding arbitration, it would

effectively preclude the beneficiary from challenging the denial of benefits in federal court.  *See*

*Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990)("Judicial review of an

arbitration award is extraordinarily narrow"); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704,

708 (7th Cir. 1994)("Judicial review of arbitration awards is tightly limited; perhaps it ought not be

called 'review' at all").  For these reasons, the arbitration provision is in conflict with the applicable

regulations.

The next question is whether the court should sever the arbitration provision.  The PARCO

plan contains a severability clause which states:

In the event that any provision of these Procedures is determined by the Arbitrator

---

29 U.S.C. § 1002(1).

or by a court of competent jurisdiction to be illegal, invalid, or unenforceable to any
extent, such term or provision shall be enforced to the extent permissible under the
law and all remaining provisions hereof shall continue in full force and effect.

Plaintiff's First Amended Complaint, Exhibit A, Section 12.11.

Severability clauses permit a court to excise certain invalid provisions from an otherwise

valid arbitration agreement without invalidating the entire agreement. *Iberia Credit Bureau, Inc. v.*

*Cingular Wireless, L.L.C.*, 379 F.3d 159, 171 (5th Cir. 2004).  In the present case, the court is

persuaded that it should apply the severability clause to dispense with the requirement that Sosa

arbitrate his claim challenging the denial of plan benefits.

The pertinent regulation, read in conjunction with the plan's severability clause, supports this

conclusion.  The regulation does not state that all arbitration provisions are unreasonable.  Instead,

the regulation states that  "[t]he claims procedures of a plan that provides disability benefits will be

deemed to be reasonable only if the claims procedures comply, **with respect to claims for disability**

**benefits**, with the requirements of paragraphs . . . (c)(4) of this section." 29 C.F.R. § 2560.503-1(d)

(emphasis added).  The language of the regulation counsels the court to sever the requirement that

Sosa arbitrate his claim for disability benefits and to hold that such requirement does not apply to

this case.

The requirement that Sosa arbitrate his workplace negligence claim is not inconsistent with

this holding.  It must be remembered that the FAA creates a presumption in favor of arbitrability,

subject to other federal laws.  In this case, the applicable federal regulations circumscribe the use of

arbitration procedures with respect to claims that are distinct from workplace negligence claims.  It

is the interplay between the FAA's presumption and the language of the Department of Labor's

regulations that causes the court to order arbitration of the negligence claims while denying

arbitration of the claim for benefits.

**IV.     Conclusion**

The Court concludes that Sosa's negligence claims are subject to binding arbitration.  The

workplace negligence claim is stayed for a period of 120 days to allow the parties to complete the

arbitration. [6]  Sosa's claim for disability benefits, however, is not subject to arbitration.  There is no

contention that Sosa's Fair Labor Standards Act claims are subject to arbitration.  The defendants'

motions to stay and to compel arbitration are therefore granted in part and denied in part.

SIGNED this 27th day of September, 2006.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

---

[6]      Sosa argues that PARCO should be required to bear the cost of arbitration because
he is allegedly disabled, has no income other than social security, and is unable to pay his living
expenses.  Twenty-nine C.F.R. § 2560.503-1(b)(3) "makes clear that any process used by a plan
to resolve a claim dispute, including arbitration, must be conducted without imposing fees on the
claimant."  Employee Retirement Income Security Act of 1974, 65 Fed. Reg. at 70,253.
Therefore, PARCO must bear the cost of all fees charged by Dispute Solutions, Inc., the entity
listed in the PARCO occupational injury benefit plan as providing arbitration services in the
event of a dispute.